UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

```
* * * * * * * * * * * * * * * * * * *
                                    *
PAUL ALLEN,                         *
          Plaintiff,                *
                                    *
V.                                  *   CIVIL ACTION NO.:
                                    *   3:02CV2251(DJS)
GERARD EGAN, EILEEN MEEHAN          *
and the NEW LONDON COUNTY           *
SHERIFF'S DEPARTMENT, NKA           *
JUDICIAL BRANCH OF                  *
THE STATE OF CONNECTICUT,           *
          Defendants.               *   APRIL 19, 2004
                                    *
* * * * * * * * * * * * * * * * * * *
```

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR JOINT MOTION FOR SUMMARY JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56

### I.   FACTUAL BACKGROUND

The following facts are undisputed. The plaintiff, Paul Allen (hereinafter "plaintiff") was hired as a special deputy with the New London County Sheriff's Department in August of 1995. (Exhibit 1, Paul Allen Depo., p. 22.) He was hired by then High Sheriff, defendant Gerard Egan (hereinafter "Egan") after Egan received a letter from the plaintiff addressed to Chief Deputy Thomas Connors indicating he would like to have Connors "place [his] name on any list for future consideration."

(Exhibit 2.)  Plaintiff was hired as a per diem employee with a four day work schedule.  (Exhibit 1, Paul Allen Depo., p. 23.) The plaintiff agreed to these terms.  Exhibit 1, Paul Allen Depo., p. 23.)  The plaintiff was never promised a fifth day of employment by Egan or co-defendant Eileen Meehan (hereinafter "Meehan").  (Exhibit 1, Paul Allen Depo., pp. 23, 33, 42.)

On December 1, 2000 the County Sheriff's Organization was abolished by a Constitutional Amendment.  (Exhibit 3.)  At that time, the plaintiff became a Judicial Marshal and an employee of the State of Connecticut.  Prior to December 1, 2000 the applicable state statutes concerning the County Sheriff's Organization and structure were contained in Connecticut General Statutes §6-41, et. seq.  Per §6-43, special deputies were per diem employees only.

Between August, 1999 and January, 2000, plaintiff was asked and did agree to fill in for an employee who was out on Workers' Compensation, thereby giving him a fifth work day during that time frame.  (Exhibit 1, Paul Allen Depo., pp. 30-35.)  Per the plaintiff's sworn testimony, he was never promised that he would continue to work a fifth day when the co-worker came back to work.

Q:   Okay.   Did anybody ever promise you
     that you would be working five days a
     week forever, once you started working
     five days?

A:   No.
(Exhibit 1, Paul Allen Depo., p. 33.)

Q:   Okay. I want to be clear.  Nobody ever
     indicated  to  you,  at  the  time  you
     started working five days, that this
     was going to be a permanent arrangement
     where you would always work five days?

A:   That's another one of those yes or no
     things.

MS. CORRIVEAU:     Did     someone     ever
                   indicate?

THE WITNESS:   No.

MR. KENNEDY:   Thank you.
(Exhibit 1, Paul Allen Depo., p. 42.)

     Prior to December 1, 2000, Egan maintained, and the
Judicial Branch, post December 2000, continues to maintain a
rotational call-in list for those Judicial Marshals desiring to
work additional days.  Prior to November 2000, the records do
not reflect who was called and who refused to work additional
days; the records reflect only who accepted additional days.
Subsequent to November 2000, records reflect each person called

and whether the offer of additional days was rejected or accepted. (Exhibit 13, Affidavit of Leigh Julian.)

In the years 2000 and 2001, plaintiff did not place his name on any call-in or rotation list. (Exhibit 13.) A review of all hiring records indicates that there have been no Judicial Marshals appointed to the New London Judicial District and no special deputies appointed after June 1999. (Exhibit 13.)

On March 16, 2001 and September, 2001 after the take over by the Judicial Department, a statewide recruitment was posted for Judicial Marshals in all Connecticut Courthouses and numerous newspapers in Connecticut. (Exhibit 7.) The plaintiff never made an application for a full time position. (Exhibits 7&8.) An e-mail dated March 23, 2001 from Maria Kewer of the Judicial Department and copied to Meehan directed all Trial Court Administrators to notify Chief Marshals that all Judicial Marshals who wished to become full time should submit an application through posting. (Exhibit 7.) A list of applicants compiled by the Judicial Department reveals that the plaintiff never made an application. (Exhibit 8.)

Subsequent to the list compiled by the Judicial Department, it came to the attention of the Judicial Department that the Marshal's Union had advised its membership that it did not have

to respond to the original Judicial Department, nevertheless, the Judicial Department accepted a new list identifying members wishing to transfer or become full time employees.  This was the first indication that plaintiff sought a full-time position with the Judicial Department.  (Exhibit 9.)

On July 2, 2001, as a result of an independent labor issue, the Judicial Department entered into an agreement with the Marshal's Union, which agreed that all part-time employees wishing additional days would be called first by the Judicial Department in need of staffing.  (Exhibit 10.)  To facilitate this agreement, the Judicial Department requested that all part-time Judicial Marshals indicate what days and which Judicial District they were interested in working.  The plaintiff responded on two occasions that he wanted "re-instatement of my fifth day" at "New London County G.A. 21."  (Exhibit 11.)

On February 7, 2000, the Union filed a state prohibited practice complaint, Case No. SPP-21,461 against the State of Connecticut, Office of County Sheriff's alleging violations for "unilaterally chang[ing] the working condition of Special Deputy Sheriff(s) in the County of New London by changing the hours of work and reducing work force."  (Exhibit 15.)

The basis of this complaint was that "in January, 2000, the Chief Deputy issued a memo to an employee by the name of Allen advising him that his hours of work were being reduced." (Exhibit 16.)   On September 17, 2000, a "Report Upon Investigation and Recommendation for Dismissal" was filed wherein it was found that:

> In the present case the facts do not demonstrate a violation of the Act because a fixed practice of maintaining employees on a permanent work schedule did not exist.  By the union's own admission, the State has altered work schedules since at least 1995.
>
> With respect to changing Allen's schedule, the State defends that action on the basis that he was originally hired as a four (4) day employee but worked five (5) days to fill in for an employee on medical leave. When that employee returned to work, Allen was returned to his four day schedule.  Even if this were not the case however, the State has clearly demonstrated and the Union has conceded to a long standing practice of altering work schedules.  (Exhibit 16.)

On October 31, 2000, a Complaint was filed by the plaintiff with the EEOC Charge Number 161A10049, alleging violations of Title VII and the ADEA.  (Exhibit 17.)   The allegations mirror the claims made in this lawsuit, i.e., denial of his fifth day. On September 27, 2002, after a thorough investigation, the EEOC "determined that it will not bring a lawsuit against the above-

named respondent for this particular charge [ADEA]." (Exhibit 18.)

In preparation for plaintiff's prior EEOC Complaint, a review of records was conducted with regard to all Sheriffs/Judicial Marshals in New London Judicial District. As of January 10, 2001, there were eighty-two Judicial Marshals. Of those Marshals, forty seven were age fifty or older (thirty-two were part-time and fifteen were full-time - this group includes all state retirees.) The remaining thirty-five Marshals were age forty-nine or younger; of these, four were part-time and thirty-one were full-time. Since plaintiff's date of hire, August 31, 1995, there have been thirty appointments for special deputies; of those thirty; thirteen were part-time and seventeen were full-time. Of the thirteen part-timers hired, ten were over forty years of age and three were under forty. Of the full-timers hired, six were over forty and eleven were under forty. (Exhibit 13.)

As of January 31, 2000, there were forty six Special Deputies over fifty years of age. Of those forty-six, twenty-nine were retirees. Eleven of the twenty-nine retirees worked full time or five days per week. (Exhibit 13.)

The plaintiff did not file with the Connecticut Commission

on Human Rights and Opportunities (CHRO) when he filed his EEOC Complaint #161A10049.  On January 27, 2003, plaintiff filed a CHRO complaint against the State of Connecticut Judicial Branch, CHRO, Case No. 0340331.  (Exhibit 19.)  The aforementioned complaint was dismissed by the CHRO on June 11, 2003 after Merit Assessment Review.  (Exhibit 20.)

A reconsideration request dated June 17, 2003 was filed on June 18, 2003 which indicated, inter alia, that "Mr. Allen is not claiming that 'State of Connecticut Retiree' is a protected status.  Mr. Allen's age is his protected status." (Exhibit 21.)

Plaintiff's Request for Reconsideration was rejected on January 7, 2004:

> The complainant provides nothing to support his allegation that his case is timely under the continuing violation theory.  The Commission has no obligation to grant reconsideration on the basis of complainant's bald unsupported assertion that he might be able to "prove" a continuing violation, at some future date.  In order to allege a continuing violation, there must be at least one related timely action alleged to have occurred within the past 180 days. Complainant has not even articulated that there was an available full time position within 180 days of filing, let alone that he applied, was qualified or was rejected for it.  The complainant's remaining issue as to whether or not his age and/or retiree status were factors in his rejection for the position, therefore, need not be addressed. (Exhibit 22, p. 3.)

Plaintiff's allegations as to the defendant Eileen Meehan are based on: "To the best of my knowledge, when the sheriffs were voted out, she was in charge and she continues to hold that rule . . . [that] [r]etirees cannot work five days a week." (Exhibit 1, Paul Allen Depo., pp. 45-46.)

The plaintiff never had a discussion with Eileen Meehan, has never attempted to call her, and has no personal knowledge of any of her duties and responsibilities.  (Exhibit 1, Paul Allen Depo., pp. 46-47, 66; Exhibit 23, Affidavit of Eileen Meehan.)

The plaintiff does not have personal knowledge whether Eileen Meehan has the ability to hire or terminate employees and has based his understanding of her duties on what he was told by others.  (Exhibit 1, Paul Allen Depo., pp. 46-47, 76.)

Plaintiff has no personal knowledge of Eileen Meehan ever hiring a sheriff, or of Eileen Meehan giving or assigning a fifth day to anyone either before or after the Judicial Department took over the sheriff's office.  (Exhibit 1, Paul Allen Depo., pp. 73-74.)

Plaintiff has "no clue" as to whether Ms. Meehan is able to

change or set policy that affects the Judicial Department. (Exhibit 1, Paul Allen Depo., p. 77.)  Eileen Meehan has never had the authority to hire, fire, discipline, assign, schedule or set working conditions during her employment with either the Office of the County Sheriffs or the Judicial Department. (Exhibit 23, Affidavit of Eileen Meehan.)

Eileen Meehan has never developed or had the authority to develop a rule restricting an individual's ability to work five days per week; she similarly is not authorized to set or change policy. (Exhibit 23, Affidavit of Eileen Meehan.)

Plaintiff has admitted that he personally knows retirees, over the age of forty (40) years, who worked and continue to work five days per week. (Exhibit 1, Paul Allen Depo., p. 59.)

Plaintiff similarly acknowledges that he knows of sheriffs over the age of fifty (50) years who were given five days by the Judicial Department. (Exhibit 1, Paul Allen Depo., pp. 102-103.)

## II. **PROCEDURAL BACKGROUND**

On May 23, 2003, the defendants jointly filed a Motion to Dismiss all thirteen counts against them contained in plaintiff's Amended Complaint.  In January, 2004, the Honorable Judge Squatrito granted the defendants' Motion to Dismiss as to eleven of the thirteen counts.  The only remaining counts encompass plaintiff's equal protection claims against Egan (first claim)

and Meehan (second claim).

The defendants now jointly move pursuant to Federal Rule of Civil Procedure 56 for judgment as a matter of law.

## III.     **LAW AND ARGUMENT**

### A.     **STANDARD OF REVIEW**

Pursuant to Rule 56 of Federal Rules of Civil Procedure, the defendants move for summary judgment.  The party moving for summary judgment bears the burden of establishing that there exists no genuine issue of material fact warranting a trial.  Adickes v. S.H. Kress & Company, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).  In addition, the affidavits and depositions in support thereof must "show that . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  In moving for summary judgment, the movant may satisfy the burden of a summary judgment by pointing to an absence of evidence to support an essential element of the non-moving party's claim.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).  The court must view the evidence in the light most favorable to the party opposing the summary judgment and must draw all permissible inferences from the affidavits, exhibits, interrogatory answers and depositions in favor of the non-moving

party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106
S.Ct. 2505, 2513-14 91 L.Ed.2d. 202 (1986); United States v.
Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.ed.2d
176 (1962).  As to the issues on which a reasonable inference
could be drawn in favor of the non-moving party, summary
judgment is improper.  Chambers v. TRM Copy Centers Corp., 43
F.2d 29, 37 (2d Cir.1994); Brady v. Town of Colchester, 863 F.2d
205, 210-11 (2d Cir.1988).

When the moving party has supported its motion by
affidavits or other material demonstrating the absence of a
genuine issue of material fact, the non-moving party cannot rely
upon mere allegations or denials; instead, the non-moving party
must demonstrate by affidavit, deposition testimony or otherwise
that a genuine issue of material fact remains for trial.  Rule
56(e); Anderson v. Liberty Lobby, Inc., supra, 477 U.S. at 257.

**B.**	**THE DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF
LAW AS TO THE FIRST AND SECOND CLAIMS OF RELIEF IN
PLAINTIFF'S AMENDED COMPLIANT ALLEGING VIOLATIONS OF 42
U.S.C. §1983 RESPECTIVELY**

**1.**	**THE PLAINTIFF HAD NO PROPERTY INTEREST IN A FIFTH
DAY OF EMPLOYMENT**

The plaintiff brings his first claim of relief pursuant to
42 U.S.C. §1983.  According to said claim, Egan violated the
equal protection clause of the 14th Amendment of the U.S.

Constitution. The plaintiff's equal protection claim can be summarized as follows: he was denied a 5th day of work as a deputy sheriff due to his status as a retiree. As a result, he claims to have lost wages and benefits. The plaintiff makes the exact same claim as to Meehan in his second claim for relief. As a matter of law, both Egan and Meehan are entitled to judgment as to said claims for relief.

There is no genuine issue of material fact that the plaintiff fails to state a cognizable claim pursuant to §1983. It is axiomatic that the alleged "conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." Abrahamson v. Board of Education of Wappingers Control School District, United States District Court, 01 CV 10859 (S.D. New York) (June 21, 2002) (attached.)

Undeniably, the plaintiff had no "right" to work a fifth day. This issue was previously decided by this Court. Blanchette v. Kupchunos, United States District Court, Civ. No. 3:99 CV 1346 (District of Connecticut) (October 16, 2000) (attached.) In Blanchette, the plaintiff, a special deputy sheriff brought an action against the Hartford High Sheriff alleging that his rights had been violated pursuant to the 14th Amendment of the Constitution and §1983. Plaintiff claimed that he was "de facto" terminated because his work hours were reduced.

The defendant moved for summary judgment which was granted by Judge Dorsey. In his decision, Judge Dorsey analyzed Conn. Gen. Stat. §6-43, i.e., the statute concerning "Special Deputies." As stated by Judge Dorsey:

> Plaintiff argues, mistakenly, that when the Department created the policy whereby special deputy sheriffs could work as many days per week as they choose, it had, in effect, modified the definition of the office, expanding it to vest him with the right to function in the courthouse for onto §6-43 the policy by which he was accustomed to "working" certain hours and being paid thereof. He accrues the right to that office as defined by the statute. He accrued no other right. The High Sheriff had no authority to alter or expand the office as defined by §6-43. There is no basis in the statute for the plaintiff to claim a right to hours and pay as the statute which defined his office may not be modified to vest him a right to hours and pay.

<u>Blanchette v. Kupchunos</u>, supra.

In holding that the plaintiff had not been deprived any right under §6-43, Judge Dorsey also noted that accepting the plaintiff's argument that he was entitled to work certain hours would "subordinate [high sheriff] to the will of each special deputy whose days are affected." <u>Id</u>.

The fact that the plaintiff fails as a matter of law to allege and/or prove any property right in a fifth day of

employment was acknowledged by this Court in its prior Memorandum of Decision.

Per Judge Squatrito:

> Allen has not alleged a constitutionally protected property interest . . . However, Allen has not alleged in his Complaint, nor identified in his memorandum, any source for his entitlement to property interest. Because his property interest is not compelling on its face, and he has failed to identify a source of this property interest, Allen has failed to state a claim upon which relief can be granted.
> (Memorandum of Decision, p. 8, in Court's file.)

Moreover, Judge Squatrito noted that the failure to identify a source for the property interest was a fundamental defect that could not be cured by discovery. Per the Memorandum of Decision, "[h]owever, Allen may amend his Complaint to cure this fundamental defect." The defendants ask the Court to take judicial notice that <u>no</u> <u>Amended</u> <u>Complaint</u> was filed after this ruling which identified the plaintiff's source for his alleged right to work a fifth day.

There is no genuine issue of material fact that the plaintiff has not presented any evidence of a property right in working a fifth day as a per diem employee. To the contrary, the applicable Connecticut General Statutes and federal case law

make clear no such right exists.  As such, the plaintiff has no
cognizable §1983 claim, entitling the defendants to judgment as
to the first claim and second claims of relief respectively.


Moreover, the fact that the plaintiff has no property right
in his "fifth day" has already been litigated.  The defendants
ask this Court to take judicial notice of the fact that the
plaintiff previously filed a Complaint with the Connecticut
Department of Labor making the same allegation that his rights
were violated by not being allowed to work a fifth day.
(Exhibit 16.)  The Connecticut Department of Labor dismissed the
claim.  In so doing,
they noted:

> In the present case, the facts do not
> demonstrate a violation of the Act because a
> fixed practice of maintaining employees on a
> permanent work schedule did not exist.  By
> the Union's own admission, the State has
> altered work schedules since at least 1995.
>
> With respect to changing Allen's schedule,
> the State defends that action on the basis
> that he was originally hired as a four (4)
> day employee but worked five (5) days to
> fill in for an employee on medical leave.

When that employee returned to work, Allen was returned to his four day schedule. Even if this were not the case however, the State has clearly demonstrated and the Union has conceded to a long standing practice of altering work schedules. (Exhibit 16.)

The fact that the plaintiff failed to prove his claim in front of the Connecticut Department of Labor establishes his inability to overcome the defendants' Motion for Summary Judgment. As stated by

the Second Circuit:

> Appellant's termination occurred, therefore, only after a decision based on substantial evidence, of an undisputedly independent, neutral, and unbiased adjudicator that had the power to prevent termination. This fact is highly probative of the absence of discriminatory intent in that termination.

Collins v. New York Transit Authority, 305 F.3d 113, 119 (2d Cir. 2002).

The plaintiff previously failed to present a cognizable claim of a property interest in front of an independent and neutral party, i.e., Connecticut Department of Labor. The

plaintiff's claim is the same in front of this Court.  As such, he cannot present any recognized property interest under §1983, entitling the defendants to judgment as a matter of law.

**2.   AS A MATTER OF LAW, THERE IS NO EVIDENCE OF ANY EQUAL PROTECTION VIOLATION BY THE DEFENDANTS**

It is difficult to determine from the vague wording of plaintiff's Amended Complaint what is the basis of his equal protection claim.  However, based upon the wording of his Amended Complaint, one must assume that it is his age and/or his alleged status as a "retiree".[1]  As a mater of law, the plaintiff fails to make out a prima facie equal protection claim.

The essence of one's right to equal protection "is that persons similarly situated with respect to challenged government action shall be treated similarly."  Smith v. U.S. Parole Com'n., 814 F. Supp. 246, 247 (D. Conn. 1993.)  This does not mean that all people must be treated identically.  Rather, to prevail on her equal protection claim, the plaintiff must show that she was treated differently because of her ethnicity, national origin, or race, or her membership in another suspect class.  See

_____

[1]     The defendants ask this Court to take judicial notice of the fact that on June 17, 2003 the plaintiff stated to the CHRO, "Mr. Allen is not claiming that 'State of Connecticut Retiree' is a protected class. Mr. Allen's age is protected status."  (Exhibit 21.)

Saulpaugh, 4 F.3d at 143-44; Carrero v. New York Housing Authority, 890 F.2d 569, 577 (2d Cir. 1989).

Moreover, the United States Supreme Court has held that age is not a suspect classification under the Equal Protection Clause. Abrahamson v. Board of Education of Wappingers Center School District, supra; citing, Vance v. Bradley, 440 U.S. 93 (1979). As such, age discrimination claims are only subject to a rational basis analysis. See Vance v. Bradley, supra. As a matter of law, the plaintiff is unable to prove he was treated differently by the defendants based on his age and/or status as a retiree.

Since the date of the plaintiff's hire in August of 1995, there have been thirty appointments for special deputies. Of those thirty, thirteen were part-time and seventeen were full-time. Of the thirteen part-timers hired, ten were over fifty years of age and three were under forty. Of the full-timers hired, six were over forty and eleven were under forty. (Exhibit 13.) As of January 31, 2000, there were forty-six special deputies over fifty years of age. Of those forty-six, twenty-nine were retirees. Eleven of the twenty-nine retirees worked full-time or five days per week. (Exhibit 13.)

As of January 10, 2001, there were eighty-two Judicial Marshals. Of those Marshals, forty-seven were age fifty or

older (thirty-two were part-time and fifteen were full-time).
This group includes all state-retirees. (Exhibit 13.) The
remaining age thirty-five Marshals were forty-nine or younger.
Of these, four were part-time and thirty-one were full-time.
(Exhibit 13.)

Thus, the statistical evidence conclusively establishes
that the plaintiff cannot, as a matter of law, state a claim
under an equal protection analysis. Undeniably, there were
special deputies hired for full-time work who were over the age
of forty and some hired for part-time work. (Exhibit 13.)
Moreover, there were Judicial Marshals who were state-retirees
who worked full-time.

Incredibly, the plaintiff makes an equal protection claim
while acknowledging under oath that he personally knows of
retirees, over the age of forty, who worked and continue to work
five days per week. (Exhibit 1, Paul Allen Depo., p. 59.) The
plaintiff further acknowledged under oath that he has personal
knowledge of sheriffs that were given five days by the Judicial
Department. (Exhibit 1, Paul Allen Depo., pp. 102-103.)

As stated by Judge Droney in granting summary judgment as
to an equal protection claim, "[the plaintiff's] conclusory
statement as to [his] belief [he] was treated differently is not

sufficient - absent other evidence - to create a genuine issue of material fact as to [his] equal protection claim." <u>Zandhri v. Dortenzio</u>, 228 F. Supp. 2d 167, 180 (Conn. 2002); citing, <u>Meiri v. Dacon</u>, 759 F. 2d 989, 999 (2d Cir.)

Furthermore, the plaintiff fails to state an equal protection claim under a "class of one" theory. <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562 (2000). In a "class of one" case, the burden is on the plaintiff to show not only "irrational and wholly arbitrary acts" but also "disparate treatment." <u>Giordano v. City of New York</u>, 274 F.3d 740, 751 (2d. Cir. 2001). The documentary and statistical evidence establish the legal bankruptcy of this claim. It must also be noted that the plaintiff does not bring this case as a class action nor does he allege a Title VII claim for disparate impact.

For the foregoing reasons, the defendants are entitled to judgment as to plaintiff's equal protection claims in the first and second claims for relief.

C. **MEEHAN IS ENTITLED TO JUDGMENT AS A MATTER OF LAW AS TO THE SECOND CLAIM OF RELIEF ALLEGING A VIOLATION OF 42 U.S.C. §1983 AS SHE LACKS PERSONAL INVOLVEMENT**

It is settled law that in a 42 U.S.C. §1983 civil rights action, a plaintiff must demonstrate the defendant's direct or personal involvement in the actions which are alleged to have

caused the constitutional deprivation. <u>Rizzo v. Goode</u>, 423 U.S. 362, 376-78, 96 S. Ct. 598, 606-07 (1976); <u>Williams v. Smith</u>, 781 F.2d 319, 323 (2d Cir. 1986); <u>U.S. ex rel. Summer v. Dixon</u>, 524 F. Supp. 83, 85 (N.D.N.Y. 1981), <u>aff'd</u>, 709 F. 2d 173, 174 (2d Cir. 1983) (per curiam), <u>cert</u>. <u>denied</u>, 434 U.S. 1087 (1977); <u>Ellis v. Blum</u>, 643 F. 2d 68, 85 (2d Cir. 1981). Liability cannot be founded on official position alone. <u>Horowitz v. Anker</u>, 437 F. Supp. 495, 504 (E.D.N.Y. 1977), <u>aff'd mem.</u> 578 F. 2d 1368 (2d Cir. 1978); <u>McKinnon v. Patterson</u>, 568 F.2d 930, 934 (2d Cir. 1977), <u>cert</u>. <u>denied</u>, 434 U.S. 1087 (1977); <u>Williams v. Vincent</u>, 508 F.2d 541, 546 (2d Cir. 1974). A public official can only be liable if the official causes the harm. <u>Baker v. McCollan</u>, 443 U.S. 137, 142, 99 S. Ct. 2693 (1979); <u>Vippolis v. Village of Haverstraw</u>, 786 F.2d 40, 44 (2d Cir. 1985). "[T]here must be some showing of personal responsibility" to support an individual capacity damages claim. <u>Duchesne v. Sugerman</u>, 566 F.2d 817, 830 (2d Cir. 1988; <u>McKinnon v. Patterson</u>, 568 F.2d 930, 934 (2d Cir. 1977), <u>cert</u>. <u>denied</u>, 434 U.S. 1087 (1978) (emphasis added); <u>Ayers v. Coughlin</u>, 780 F.2d 205, 210 (2d Cir. 1985); <u>Alfaro Motors, Inc. v. Ward</u>, 814 F.2d 883, 886 (2d Cir. 1987); <u>Gill v. Mooney</u>, 824 F.2d 192, 196 (2d Cir. 1987). To have created a policy or custom under which there were

constitutional practices, one must have "impliedly or tacitly authorized, approved or encouraged" the constitutional violation. Turpin v. Mailet, 619 F.2d 196 (2d Cir. 1980), cert. denied, 449 U.S. 1016, 101 S.Ct. 577 (1980); see also Rizzo v. Goode, 423 U.S. at 371-72.

There are virtually no facts alleged in the Complaint that the defendant Meehan violated any rights of the plaintiff. Throughout the Complaint, the plaintiff makes only non-specific, vague and conclusory allegations, which alone renders his Complaint subject to dismissal. Bieros v. Nicola, 860 F. Supp. 226, 229 (E.D. Pa. 1994). General and vague allegations against public officials do not state a cause of action. Powell v. Jarvis, 460 F. 2d 551, 552 (2d Cir. 1972); Koch v. Yunich, 533 F. 2d 80, 85 (2d Cir. 1976). Personal involvement by defendants alleged unconstitutional conduct is a prerequisite for a §1983 cause of action. See, Williams v. Smith, 781 F.2d at 323.

As evidenced by the plaintiff's deposition (Exhibit 1) and Eileen Meehan's Affidavit (Exhibit 23), it is clear that plaintiff's lawsuit against Ms. Meehan is misplaced, if not frivolous. The plaintiff has never had a discussion with the defendant Meehan, has never attempted to call her and has no personal knowledge of any of her duties and responsibilities. (Exhibit 1, Paul Allen Depo., pp. 46-47, 66; Exhibit 23.) The

plaintiff had no personal knowledge of Ms. Meehan's ability to hire, fire, terminate or assign schedules; he had "no clue" as to whether she was able to set or change Judicial Department Policy. (Exhibit 1, Paul Allen Depo., pp. 73-74; Exhibit 23.) In fact, Ms. Meehan has never had the authority to hire, fire, discipline, assign, schedule or set working conditions for Judicial Department employees nor has she ever had the authority to set or change Judicial Department Policy. (Exhibit 23.)

Per the plaintiff's testimony:

> Q:   Okay.  While Gerry Egan was a sheriff, do you have any knowledge of Eileen Meehan hiring any sheriff anywhere in the State of Connecticut?

> A:   I have no personal knowledge.

> (Exhibit 1, Paul Allen Depo., p. 73.)

The plaintiff further testified:

> Q:   Okay.  You indicated in the same line of questioning, in paragraph 19, that Meehan and the present administration in the Judicial Department didn't change the policy of discriminated against state retirees.  Do you see that?

> A:   yes.

> Q:   So you have no knowledge of whether or not she's even able to set policy; isn't that correct?

> A:   Okay.  If you want to change it to correct it, it could be, Meehan could say administration of the marshals.  I

> don't know if she's the one that does it
> or not.
>
> Q:  You have no clue, basically?
>
> A:  No.
> (Exhibit 1, Paul Allen Depo., p. 77.)

In plaintiff's Complaint, and in his deposition, plaintiff has not provided a scintilla of factual information against Eileen Meehan to support any of plaintiff's allegations.  In essence, the plaintiff has not demonstrated any reason for including her as a defendant.

There is simply no level of personal responsibility alleged or documented that could be viewed as participating in or encouraging a constitutional violation of any kind.  For these reasons, the plaintiff's §1983 claim against the defendant Meehan should be dismissed.

D.  **THE DEFENDANTS ARE ENTITLED TO THE DEFENSE OF QUALIFIED IMMUNITY**

At the outset, it must be noted that it is the defendants' position that this Court need not even reach the issue of whether qualified immunity applies to Egan and Meehan as the plaintiff has not delineated any recognized property right under

§1983.  In <u>Blanchette</u>, the defendant argued in response to the plaintiff's §1983 claim that he was entitled to qualified immunity.  Judge Dorsey, in granting summary judgment, noted:

> Plaintiff's second cause of action, an alleged violation of his rights under the Fourteenth Amendment of the U.S. Constitution and 42 U.S.C. §1983, must fail since he was not deprived of a property right created by §6-43.  See <u>Board of Regents of State Colleges v. Roth</u>, 408 U.S. 564, 577 (1972) ("Property interests . . . are not created by the Constitution.  Rather, they are created and . . . defined by existing rules or understandings that stem from an independent source such as state law.") This conclusion is based on the language of §6-43, the lack of case law directly in support of plaintiff's position and the discretion granted to the High Sheriff in appointing and utilizing special deputy sheriffs. Thus, it is unnecessary to decide the question of qualified immunity.  However, because plaintiff had no property right to work any particular hours for pay, there was no right lost to plaintiff as a result of any conduct by defendant and thus qualified immunity would not be invocable even if plaintiff were now recognized to be entitled to enforce the right here claimed.

<u>Blanchette v. Kupchunos</u> supra.

The defendants urge this Court to adopt Judge Dorsey's decision that a Special Deputy has no property interest in setting his own hours.

Even assuming arguendo that the Court reaches the applicability of the defense of qualified immunity, there is no

genuine issue that Egan is entitled to its protections.

As noted by the Second Circuit:

> A government official sued in his individual capacity is entitled to qualified immunity in any of three circumstances: (1) if the conduct attributed to him is not prohibited by Federal law; (2) where that conduct is so prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time of the conduct; or (3) if the defendant's actions was 'objective[ly] legal [ly] reasonable[ly] . . . In light of the legal rules that were clearly established at the time it was taken.' These three issues should be resolved in sequence, for if the second is resolved, the third becomes moot; a favorable resolution of the first moots the second and third.

X-Men Sec., Inc., v. Pataki, 196 F.3d 56, 65-66 (2nd Cir. 1999).

It is undisputed that at all relevant times Egan was statutorily empowered to determine how to utilize his special deputy sheriffs. Blanchette v. Kupchunos, supra. Thus, Egan's

decision not to give the plaintiff a fifth day of employment fell squarely within his statutory right to determine the scheduling of his subordinates.    As concerns Meehan, as previously discussed, there is not a scintilla of evidence of her personal involvement in determining plaintiff's work schedule.

**E.    THE PLAINTIFF'S CLAIMS AGAINST DEFENDANTS EGAN AND MEEHAN ARE BARRED BY THE STATUTE OF LIMITATIONS**

It is undisputed that the plaintiff's sole "discrimination" claim is that he was denied a fifth day of work as a per diem special deputy.    It is further undisputed that the plaintiff testified he was hired as a special deputy in August of 1995 and started working in January of 1996.    (Exhibit 1, Paul Allen Depo., p. 22.)    At that time, he knew he was only being hired for four days a week.    (Exhibit 1, Paul Allen Depo., p. 23-24, 32-33.)

Moreover, it is undisputed that he was never promised a fifth day.    (Exhibit 1, Paul Allen Depo., p. 33.)    Furthermore, per plaintiff's testimony:

Q:    Had you requested to work five days?

A:    Forever, yes.

Q:    What do you mean by "forever"?

A:    I've asked throughout the whole time.

Q:    From the day you were hired?

A:    Yes.

Q:    Okay.  And when you asked to work five days, what was the response?

A:    No.

Q:    Who gave you that response?

A:    Gerry Egan.

Q:    And did he give you a reason?

A:    I was retired.

(Exhibit 1, Paul Allen Depo., ps. 31-32.)

Based on the plaintiff's sworn testimony, his §1983 claims against the defendants are barred.  It is undisputed that a three year statute of limitations applies to actions brought pursuant to §1983.  To be sure, the plaintiff knew of the alleged discriminatory act of not giving him a fifth day, in August of 1995 when he was hired.  Moreover, the mere fact that the plaintiff alleges he continuously requested a fifth day does not establish a continuing violation.  Purdy v. Town of Greenburgh, 166 F. Supp. 2d 850, 863 (S.D. N.Y. 2001), citing, Lambert v. Genesee Hospital, 10 F. 3d 46, 52 (2nd Cir. 1993.)

As stated by the Purdy Court, "[m]erely alleging several distinct acts of discrimination does not establish a continuing

violation." <u>Purdy v. Town of Greenburgh</u>, 166 F. Supp. 2d 863;

<u>National Railroad Passenger Corporation v. Morgan</u>, 536 U.S. 101

(2002).

Moreover, the Connecticut Commission on Human Rights and

Opportunities (CHRO) has already rejected the plaintiff's claim

of a continuing violation.  In rejecting the plaintiff's Request

for Reconsideration on January 7, 2004, the CHRO stated:

> The complainant provides nothing to support
> his allegation that his case is timely under
> the continuing violation theory.  The
> Commission has no obligation to grant
> reconsideration on the basis of complainant's
> bald unsupported assertion that he might be
> able to "prove" a continuing violation, at
> some future date.  (Exhibit 22, p. 3.)

The alleged discrimination by the defendants took place in

August of 1995.  Thus, the statute of limitations ran out on

this claim in August of 1998.  This action was not filed until

December 19, 2002.  Thus, the defendants are entitled to

judgment as a matter of law.

## IV.  **CONCLUSION**

There is no genuine issue of material fact that the defendants Egan and Meehan are not entitled to judgment as a matter of law as to plaintiff's equal protection claims against them.  It is undisputed that:

1. The plaintiff has no cognizable §1983 claim as he had no property interest in working a fifth day;

2. The plaintiff failed to comply with Judge Squatrito's prior ruling that he needed to file an Amended Complaint to attempt to cure the fundamental defect of failing to identify a source of his alleged property right in a fifth day;

3. The Connecticut Department of Labor has already ruled that the plaintiff had no right to his "fifth day";

4. The undisputed statistical evidence establishes that there was no equal protection violation by the defendants;

5. The defendants are entitled to the defense of qualified immunity as the administration clearly had the right to set the work schedules of special deputies (as acknowledged by his own Union!);

6. The plaintiff's §1983 action is time barred.  The

plaintiff, in his own words, was aware of the alleged discrimination from the day he was hired, i.e., August of 1995. The plaintiff failed to bring suit until December 19, 2002;

7. The plaintiff does not present a scintilla of evidence that defendant Meehan had any personal involvement in hiring/firing of special deputies or in the implementation of administrative policy.

As such, the defendants jointly pray that this Court grant their Motion for Summary Judgment.

FOR THE DEFENDANTS,
EILEEN MEEHAN and the NEW LONDON
COUNTY SHERIFF'S DEPARTMENT, NKA
JUDICIAL BRANCH OF THE STATE OF
CONNECTICUT

by_____

      Jane B. Emons
      Assistant Attorney General
      Federal Bar No. CT 16515
      55 Elm Street
      P.O. Box 120
      Hartford, CT 06141
      Phone: (860) 808-5340
      Fax: (860) 808-5385
      Jane.emons@po.state.ct.us

THE DEFENDANT,
GERARD EGAN

By_____
Jeffrey W. Kennedy (CT 16419) of
Milano & Wanat LLC
471 East Main Street
Branford, Connecticut 06405
Tel:(203)315-7000
Fax:(203)315-7007
Email: jkennedy@mwllc.us

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing has been mailed, first-class, post prepaid to:

Francis A. Miniter, Esquire
Miniter & Associates
147 Charter Oak Avenue
Hartford, Connecticut 06106

on this the ___ day of April, 2004.

_____
Jeffrey W. Kennedy