UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PAUL ALLEN, | : | CIVIL ACTION NO. 3:02CV2251 (DJS) |
|    *Plaintiff* | : | |
| | : | |
| v. | : | |
| | : | |
| GERARD EGAN, EILEEN MEEHAN | : | |
| and the NEW LONDON COUNTY | : | |
| SHERIFF'S DEPARTMENT, NKA | : | |
| JUDICIAL BRANCH OF | : | |
| THE STATE OF CONNECTICUT, | : | |
|    *Defendants* | : | APRIL 19, 2004 |

**DEFENDANTS' JOINT STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE**

     Pursuant to Local Rule 56(a)(1), the following materials facts are not in dispute for the purpose of ruling on the present Joint Motion for Summary Judgment.

     1.     The plaintiff, Paul Allen, was sworn in August 1995 as a special deputy sheriff in New London County in January 1996.  (Exhibit 1., Paul Allen Depo., pp. 22-23).

     2.     The defendant, High Sheriff Gerard Egan, hired the plaintiff after receiving a letter from him indicating to Chief Deputy Tom Connors that he would be happy to be considered for any future position.  (Exhibit 1, Paul Allen Depo., p. 23; Exhibit 2).

     3.     On December 1, 2000, plaintiff became a Judicial Marshal and an employee of the defendant State of Connecticut Judicial Department.  By Constitutional Amendment, the County Sheriff's organization was abolished.  (Exhibit 3).

4.    When he was hired, plaintiff agreed to work four days per week, per diem, and was never promised a five day per week job.  (Exhibit 1, Paul Allen Depo., pp. 23-24, 32-33).

5.    Plaintiff and all other special deputy sheriffs never held a designation as part-time or full-time.  The court may take judicial notice that the applicable state statutes Conn. Gen. Stat. §§ 6-41 and 6-43 designated special deputy sheriffs as per-diem appointees only.

6.    Prior to plaintiff's hire, Sheriff Egan took steps to address budgetary constraints through schedule reduction as outlined in a memo dated November 3, 1995.  (Exhibit 4).

7.    Between August 1999 and January 2000, plaintiff was asked to and did agree to fill in for an employee who was out on workers' compensation, thereby giving him a fifth work day for that period of time.  (Exhibit 1, Paul Allen Depo., pp. 30-35).

8.    When the employee was able to return to duty from workers' compensation, complainant was notified in writing, per his request, that he was to return to his earlier four day per week schedule.  His name was to be placed in a pool of employees available for call in on Fridays.  (Exhibit 5).

9.    On March 16, 2001 and September 21, 2001, the defendant Judicial Department issued a statewide recruitment and posting for Judicial Marshals.  This posting was placed in all listed newspapers and placed in all Courthouse locations.  The plaintiff did not respond to these postings.  (Exhibit 6).

10.   An e-mail dated March 23, 2001 from Maria Kewer of the Judicial Department and copied to defendant Eileen Meehan directed all Trial Court Administrators to notify Chief Marshals that all Judicial Marshals wishing to become full-time should submit application through posting.  The plaintiff did not make application.  (Exhibit 7).

11. A list of all applicants for full-time employment in response to the Judicial Marshal posting was compiled by the defendant Judicial Department. The plaintiff's name is absent from the list as he never made application for a full-time position. (Exhibit 8).

12. Subsequent to the list referenced in paragraph 11 above, it came to the attention of the Judicial Department that the Union had advised its membership that it need not respond to the original Judicial posting. The Judicial Department nevertheless accepted a new list identifying members wishing to transfer or become full-time employees. This was the first indication that plaintiff sought a full-time position with the Judicial Department. (Exhibit 9).

13. On July 2, 2001, as a result of an independent labor issue, the Judicial Department entered into an agreement with the Union, and agreed that all part-time employees wishing additional days would be called first by the Judicial District in need of staffing. (Exhibit 10).

14. To facilitate the agreement referenced in paragraph 13 above, the Judicial Department requested that all part-time Judicial Marshals indicate what days and which Judicial District they were interested in working. Mr. Allen responded on two occasions that he wanted "reinstatement of my fifth day" at the location "New London County GA 21." (Exhibit 11).

15. A memo from plaintiff to Lt. Rick Miller dated November 21, 2000 was the first time that plaintiff requested, in writing, an additional day of work, i.e., "to be reassigned to a full 5-day work week". (Exhibit 12).

16. A review of plaintiff's attendance records during his tenure as a special deputy sheriff, prior to December 2000, indicates:

   a) in 1996, plaintiff took 5 weeks leave of absence and worked only two additional days;

   b) in 1997, plaintiff took 4 weeks leave of absence and worked no additional days;

   c) in 1998, plaintiff took 3 weeks leave of absence and worked no additional days. (Exhibit 13, Affidavit of Leigh Julian).

17. A further review of plaintiff's attendance record during his tenure as a special deputy sheriff, prior to December, 2000, reveals:

   a) from January through June 1999, plaintiff worked no additional days.

   b) from June through December 1999, plaintiff worked 22 additional days but took 3 weeks leave of absence. (Exhibit 13).

18. Effective July 1, 1999, full-time special deputies became eligible for holiday and personal leave payments; this time frame coincides with plaintiff's pursuit of full-time status. (Exhibit 14).

19. Prior to December 1, 2000, High Sheriff Egan maintained, and the Judicial Branch, post December 1, 2000, continues to maintain, a rotational call-in list for those Judicial Marshals desiring to work additional days. Prior to November 2000, the records do not reflect who was called and who refused to work additional days; the records reflect only who accepted additional days. Subsequent to November 2000, records reflect each person called and whether the offer of additional days was rejected or accepted. (Exhibit 13).

20. In the years 2000 and 2001, plaintiff's name did not appear on any call-in or rotation list. (Exhibit 13).

21. A review of all hiring records indicates that there have been no Judicial Marshals appointed to the New London Judicial District and no special deputies appointed after June 1999. (Exhibit 13).

22. In preparation for plaintiff's prior EEOC complaint, a review of records was conducted with regard to all Sheriffs/Judicial Marshals in New London Judicial District. As of January 10, 2001, there were eighty-two Judicial Marshals. Of those Marshals, forty seven were age fifty or older (thirty-two were part-time and fifteen were full time - this group includes all state retirees). The remaining thirty-five Marshals were age forty-nine or younger; of these, four were part-time and thirty-one were full-time. Since plaintiff's date of hire, August 31, 1995, there have been thirty appointments for special deputies; of those thirty; thirteen were part-time and seventeen were full-time. Of the thirteen part-timers hired, ten were over forty years of age and three were under forty. Of the full-timers hired, six were over forty and eleven were under forty.

23. As of January 31, 2000, there were forty six Special Deputies over fifty years of age. Of those forty-six, twenty-nine were retirees. Eleven of the twenty-nine retirees worked full time or five days per week.

24. On February 7, 2000, the Union filed a state prohibited practice complaint, Case No. SPP-21,461 against the State of Connecticut, Office of County Sheriffs alleging violations for "unilaterally chang[ing] the working condition of Special Deputy Sheriff(s) in the County of New London by changing the hours of work and reducing the work force." (Exhibit 15).

25. The basis of this complaint was that "In January, 2000, the Chief Deputy issued a memo to an employee by the name of Allen advising him that his hours of work were being reduced."  (Exhibit 16).

26. On September 7, 2000, a "Report Upon Investigation and Recommendation for Dismissal" was filed wherein it was found that:

> In the present case the facts do not demonstrate a violation of the Act because a fixed practice of maintaining employees on a permanent work schedule did not exist.  By the union's own admission, the State has altered work schedules since at least 1995.
>
> With respect to changing Allen's schedule, the State defends that action on the basis that he was originally hired as a four (4) day employee but worked five (5) days to fill in for an employee on medical leave.  When that employ returned to work, Allen was returned to his four day schedule.  Even if this were not the case however, the State has clearly demonstrated and the Union has conceded to a long standing practice of altering work schedules.  (Exhibit 16).

27. On October 31, 2000, a Complaint was filed by Paul Allen with the EEOC Charge Number 161A10049, alleging violations of Title VII and the ADEA.  (Exhibit 17).

28. On September 27, 2002, after a thorough investigation, the EEOC "determined that it will not bring a lawsuit against the above named Respondent for this particular charge [ADEA]".  (Exhibit 18).

29. The plaintiff, Paul Allen, did not file with the Connecticut Commission on Human Rights and Opportunities (CHRO) when he filed his EEOC complaint #161A10049.

30. On January 27, 2003, plaintiff filed a CHRO complaint against the State of Connecticut Judicial Branch, CHRO, Case No. 0340331.  (Exhibit 19).

31. The aforementioned complaint was dismissed by the CHRO on June 11, 2003 after Merit Assessment Review. (Exhibit 20).

32. A reconsideration request dated June 17, 2003, was filed on June 18, 2003 which indicated, *inter alia*, that "Mr. Allen is not claiming that 'State of Connecticut Retiree' is a protected status. Mr. Allen's age is his protected status." (Exhibit 21).

33. Plaintiff's Request for Reconsideration was rejected on January 7, 2004:

> The complainant provides nothing to support his allegation that this case is timely under a continuing violation theory. The commission has no obligation to grant reconsideration on the basis of complainant's bald unsupported assertion that he might be able to "prove" a continuing violation at some future date. In order to allege a continuing violation, there must be at least one related timely action alleged to have occurred within the past 180 days. Complainant has not even articulated that there was an available full time position within 180 days of filing, let alone that he applied, was qualified or was rejected for it. The complainant's remaining issue as to whether or not his age and/or retiree status were factors in his rejection for the position, therefore, need not be addressed. (Exhibit 22, p. 3).

34. At his deposition, plaintiff claimed that the only basis for his claim of discrimination is defendant Egan's "five-day rule" and nothing else. (Exhibit 1, Paul Allen Depo., p. 45).

35. Plaintiff's allegations as to the defendant Eileen Meehan are based on: "To the best of my knowledge, when the sheriffs were voted out, she was in charge and she continues to hold that rule . . . [that] [r]etirees cannot work five days a week." (Exhibit 1, Paul Allen Depo, pp. 45-46).

36. The plaintiff never had a discussion with Eileen Meehan, has never attempted to call her, and has no personal knowledge of any of her duties and responsibilities. (Exhibit 1, Paul Allen Depo., pp. 46-47, 66; Exhibit 23, Affidavit of Eileen Meehan).

37. The plaintiff does not have personal knowledge whether Eileen Meehan has the ability to hire or terminate employees and has based his understanding of her duties on what he was told by others. (Exhibit 1, Paul Allen Depo., pp. 46-47, 76).

38. Plaintiff has no personal knowledge of Eileen Meehan ever hiring a sheriff, or of Eileen Meehan giving or assigning a fifth day to anyone either before or after the Judicial Department took over the sheriff's office. (Exhibit 1, Paul Allen Depo., pp. 73-74).

39. Plaintiff has "no clue" as to whether Ms. Meehan is able to change or set policy that affects the Judicial Department. (Exhibit 1, Paul Allen Depo., p. 77).

40. Eileen Meehan has never had the authority to hire, fire, discipline, assign, schedule or set working conditions during her employment with either the Office of the County Sheriffs or the Judicial Department. (Exhibit 23, Affidavit of Eileen Meehan).

41. Eileen Meehan has never developed or had the authority to develop a rule restricting an individual's ability work five days per week; she similarly is not authorized to set or change policy. (Exhibit 23, Affidavit of Eileen Meehan).

42. Plaintiff has admitted that he personally knows retirees, over the age of forty (40) years, who worked and continue to work five days per week. (Exhibit 1, Paul Allen Depo., p. 59).

43. Plaintiff similarly acknowledges that he knows of sheriffs over the age of fifty (50) years who were given five days by the Judicial Department. (Exhibit 1, Paul Allen Depo., pp. 102-103).

        DEFENDANTS,
        GERARD EGAN, EILEEN MEEHAN
        and the NEW LONDON COUNTY
        SHERIFF'S DEPARTMENT, NKA
        JUDICIAL BRANCH OF
        THE STATE OF CONNECTICUT

        RICHARD BLUMENTHAL
        ATTORNEY GENERAL


BY: _____
    Jane B. Emons
    Assistant Attorney General
    Federal Bar No. 16515
    55 Elm Street - P.O. Box 120
    Hartford, CT  06141-0120
    Tel: (860) 808-5340
    Fax: (860) 808-5383
    Email:  jane.emons@po.state.ct.us


    DEFENDANTS,
    GERARD EGAN IN HIS
    INDIVIDUAL CAPACITY ONLY


BY: _____
    Jeffrey Kennedy, Esq.
    Milano & Wanat
    471 East Main Street
    Branford, CT  06405
    Tel: (203) 315-7000
    Fax: (203) 315-7007
    Email:  **jkennedy@mwllc.us**

**CERTIFICATION**

I hereby certify that a copy of the foregoing was mailed in accordance with Rule 5(b) of the Federal Rules of Civil Procedure on this 19th day of April, 2004, first class postage prepaid to:

Francis A. Miniter, Esq.
Miniter & Associates
100 Wells Street, Unit 1-D
Hartford, CT  06103

_____
Jane B. Emons
Assistant Attorney General