UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PAUL ALLEN ) | |
|     Plaintiff ) | CIVIL ACTION NO: |
| ) | 3:02CV2251 (DJS) |
| VS. ) | |
| ) | |
| GERARD EGAN, EILEEN MEEHAN and the ) | |
| NEW LONDON COUNTY SHERIFF'S ) | |
| DEPARTMENT, NKA JUDICIAL BRANCH OF ) | |
| THE STATE OF CONNECTICUT ) | MAY 24, 2004 |
|     Defendant | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS
OBJECTION TO JOINT MOTION FOR SUMMARY JUDGMENT**

The Plaintiff in the above captioned requests that the Court deny the Joint Motion for Summary Judgment for the reasons contained herein.

**I.     FACTS**

The Plaintiff, Paul Allen, has been employed as a Special Deputy Sheriff (now a Judicial Marshal) of the New London County Sheriff's Department, now known as the Judicial Branch of the State of Connecticut, for approximately 6 years. Affidavit of Paul Allen ¶1. At the time of his hire, the Plaintiff was forty-nine (49) years of age and a retiree from the State of Connecticut. Affidavit of Paul Allen ¶2. Defendant Gerard Egan was, from the beginning of Plaintiff's employment until on or about December 2000, the High Sheriff of New London County. Affidavit of Paul Allen ¶3. Defendant Eileen Meehan was, from December 2000 to the present, the Personnel Manager of the Recruitment, Employee and Marshal Services Section of the Judicial Branch of the State of Connecticut. Affidavit of Paul Allen ¶4.

The Plaintiff alleges that since November of 1995, the Sheriff's Department has engaged in a continued and systematic pattern of discrimination toward Special Deputy Sheriffs based on age. Affidavit of Paul Allen ¶5. At the time of Plaintiff's hire in January 1996, the Defendants Gerard

Egan and the New London Country Sheriff's Department informed Mr. Allen that he was not eligible for full time work due to his status as retiree of the State of Connecticut. Consequently, Mr. Allen was only allowed to work four days a week. Affidavit of Paul Allen ¶6.

Over time, the Defendants Gerard Egan and the New London Country Sheriff's Department continued a pattern and practice of discriminating against their employees within the protected class, age. For example, since May 1997, the Defendants reduced Special Deputy Sheriffs who were within the protected class and were also retirees from full time status to part time status, and replaced them with persons outside of the protected class. Affidavit of Paul Allen ¶7. In August 1997, Defendants demoted Major Joe Riley who was both in the protected class and a retiree to Special Deputy Sheriff and transferred the individual to a less desirable work location. Affidavit of Paul Allen ¶8. This individual was replaced by Marty Lane, an individual outside of the protected class. Affidavit of Paul Allen ¶8.

In 1999, the Defendants demoted Frank Paparelli, a Special Deputy Sheriff who was in the protected class and a retiree, from second in command and transferred him to a less desirable work location. Affidavit of Paul Allen ¶9. They also took one of his days away from him. At the same time, they took one day away from Hank Kerr, who was also in the protected age class and a retiree. These days were given to two younger Special Deputy Sheriff, Judy Leffingwell and Diane Hatfield. Affidavit of Paul Allen ¶9.

In August, 1999, the Plaintiff attained full time status, and was allowed to work five (5) days a week. The Plaintiff worked without incident until January 6, 2000, when the Defendants Gerard Egan and the New London Country Sheriff's Department informed him that he was being demoted to part time status, four days a week. Affidavit of Paul Allen ¶10. Egan gave Allen's fifth day to Robert Foltz, who was younger than Allen. The Defendants claim that Plaintiff was originally given the fifth day because Special Deputy Sheriff Bouchard was out on compensation and they needed

a replacement. In fact, Bouchard returned in October, 3 months before Egan demoted the Plaintiff in January, 2000. Bouchard's return in October had nothing to do with Plaintiff's demotion in January. Affidavit of Paul Allen ¶10.

Plaintiff requested full time status since that time, but he was not given it until October 31, 2003 when he was promoted to Lead Marshal. Affidavit of Paul Allen ¶11. The majority of other Special Deputy Sheriffs who were also over the age of 40 and State of Connecticut Retirees were not allowed full time status while individuals outside the protected class are allowed to work full time. Affidavit of Paul Allen ¶12. Many Special Deputy Sheriffs over the age of 40 and retirees will testify that they were not allowed full time duty because of their age and status as a retiree with a pension. *See* Affidavits of Bissonnette ¶5, DeBartolo ¶7, Hawks ¶6-7, Hinse ¶5-7, Jaskiewicz ¶ 5-9, Paparelli ¶5-7, Riley ¶4-7 and Miller ¶5-8, all attached hereto. In fact, some of them felt that even asking for full-time status put their jobs in jeopardy. *See* Affidavit of DeBartolo ¶8.

Sheriff Egan consistently explicitly stated that he would not allow retirees to work full time. *See* Affidavit of Bissonette ¶5; Affidavit of Hawks ¶7; Affidavit of DeBartolo ¶6-8; Affidavit of Miller ¶6. Gerard Egan has told Joel Riley, his Major of Operations on many occasions that full-time is only for people who did not have a pension. According to Riley, Egan made that a major consideration in scheduling Special Deputy Sheriff's for duty. Affidavit of Riley ¶4. Egan expressed to Riley on many occasions that because people with pensions already were receiving money, they should not be allowed to work full time. However, this was arbitrary, because some of the individuals were receiving extremely small pensions and really needed the full time work. Affidavit of Riley ¶6. In fact, it has been called a "policy" of the Judicial Department that older Special Deputy Sheriffs who were receiving a pension were not allowed to work full time. *See* Affidavit of Frank Paparelli ¶5-6 and Exhibit A thereto. However, High Sheriff Egan was friendly

3

with several Special Deputy Sheriffs who he made an exception for in his rule against those receiving a pension working full time.  Affidavit of Riley ¶5.

There is evidence that Sheriff Egan acted out of spite and malice to prevent elderly Special Deputy Sheriffs from working full time.  *See* Affidavit of Miller generally; Affidavit of DeBartolo ¶6-8; Affidavit of Hawks ¶7.  Jame Miller held the office of President of the Sheriff's Association. In September of 1995, Sheriff Egan decided to reduce the hours of nine Special Deputy Sheriffs who were all retirees.  Miller confronted him about it and attempted to persuade him to return the Special Deputy Sheriffs to their full time positions.  Affidavit of Miller ¶5.  In retribution for Miller's actions, Sheriff Egan decided that Retirees were no longer eligible to work 5 days a week.  Egan made it a policy of the Sheriff's Department that retirees were not eligible to work full-time. Affidavit of Miller ¶6.  There is no legitimate reason the state would have for denying older individuals who are retirees from working full time.  This was an arbitrary decision made by High Sheriff Egan.  See Affidavit of Riley ¶7.

Defendants claim that the Plaintiff did not put himself on a "list" to be called to work on Fridays.  Plaintiff continually verbally asked to be given a fifth day.  Affidavit of 14.The Plaintiff signed up for every opportunity to work a fifth day a week. See Affidavit of Allen ¶14.  Moreover, he was assured in the January 6, 2000 memorandum that his "name will be placed in a pool of employees available for call in on Fridays."  See Affidavit of Allen ¶19 and Exhibit C attached thereto.  However, only times that Plaintiff was ever asked to work on a Friday, he was asked late on a Thursday, when he already had plans made for Friday. See Affidavit of Allen ¶16.  In addition, if Plaintiff  turned down 94 days in 2 years, it would seem that he should have been a full-time employee.  Egan and Meehan  never intended to ask Allen to work those 94 days, although they knew he desired them.  See Affidavit of Allen ¶16.

4

The Defendants also claim that Plaintiff should have filled out an application for employment if he wanted to work a 5th day. This makes no sense because the application is for the position of JM1 and the Plaintiff was already a JM2. See Affidavit of Paul Allen ¶17. Filling the application out would require the Plaintiff to have taken a demotion. See Affidavit of Paul Allen ¶17.

## II.    STANDARD FOR MOTION FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides for the granting of a summary judgment motion if "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The purpose of summary judgment is to determine whether a trial will be necessary. "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 247-48 (1986). Summary judgment is appropriate "`if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed.R.Civ.P. 56(c)). Indeed, Rule 56(c) of the Federal Rules of Civil Procedure "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id.

## III.   ARGUMENT

A.  A PROPERTY INTEREST IS NOT AN ELEMENT OF AN EQUAL PROTECTION CLAIM.

The Defendants argue at length that Mr. Allen's claims must fail because he cannot allege a property interest in his employment. While it is true Mr. Allen cannot allege a property interest in his employment, it is simply not relevant to his Equal Protection claim.

If Mr. Allen was alleging a **due process** violation, alleging a property interest would certainly be a necessary element of his claim. However, he is not alleging a due process violation - he is alleging an Equal Protection claim, in that he was treated differently than similarly situated deputy sheriffs because of his age. "The Equal Protection Clause requires that the government treat all similarly situated people alike." Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 (2d Cir. 2001) (*citing* City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)). There is no requirement in an equal protection claim that the Plaintiff has a property interest at stake. The Defendants are attempting to throw a red herring into this case by misconstruing the nature of the Plaintiff's Equal Protection claims and the elements necessary to support those claims.

B.  THE PLAINTIFF HAS A VALID EQUAL PROTECTION CLAIM.

When a statute neither impinges on a fundamental right guaranteed by the Constitution nor uses a classification based on a suspect criterion such as race, nationality, alienage, or gender, the law generally will not be found to violate the Equal Protection Clause **unless it has no reasonable or rational basis**. *See, e.g.,* Exxon Corp. v. Eagerton, 462 U.S. 176, 196 (1983); Hodel v. Indiana, 452 U.S. 314, 331(1981). A statute or policy that regulates economic conditions is to be examined under the rational basis standard unless it uses invidious classifications. *See, e.g.,* City of New Orleans v. Dukes, 427 U.S. 297, 303-04 (1976). Under the rational basis standard, a state's policy "will be sustained if [it] could have reasonably [been] concluded that the challenged classification

would promote a legitimate state purpose." Exxon Corp. v. Eagerton, 462 U.S. at 196; Story v. Green, 978 F.2d 60 (2nd Cir. 1992).

What is the legitimate state purpose in the case at bar? The state has offered no legitimate state purpose. In fact, there is evidence that Egan was motivated by spite against James Miller. Mr. Miller held the office of President of the Sheriff's Association. In September of 1995, Sheriff Egan decided to reduce the hours of nine Special Deputy Sheriffs who were all retirees. Mr. Miller confronted him about it and attempted to persuade him to return the Special Deputy Sheriffs to their full time positions. Affidavit of James Miller ¶5.

In retribution for Mr. Miller's actions, Sheriff Egan decided that Retirees were no longer eligible to work 5 days a week. Affidavit of James Miller ¶6   After Egan got into the disagreement with Miller, Egan said to Bill Hawks, another Special Deputy Sheriff, "Miller will never work 5 days again and you won't, either, because you are receiving a pension. Affidavit of Miller ¶7. Egan made it a policy of the Sheriff's Department that retirees were not eligible to work full-time. Affidavit of James Miller ¶6, Affidavit of Riley ¶4-7. Egan acted out of retribution and spite for Mr. Miller, and spite is not rationally related to a legitimate state purpose. The Plaintiff can make a valid equal protection claim.

Egan's actions can only be perceived as spiteful. When Vic DeBartolo asked to be returned to full time work, Sheriff Egan told him that "Shop Rite has a union and they are looking for baggers." Affidavit of DeBartolo ¶6. Egan also told him that if he continued to ask for a fifth day, he would not be given any days, which was perceived by DeBartolo as a threat to his job. See Affidavit of DeBartolo ¶8. When the Plaintiff asked Egan if he Egan if he would allow the Plaintiff

7

to work serving papers for his fifth day, instead of working at the courthouse, Egan became irate and stated that "all retirees are just a bunch of greedy pigs." Affidavit of Paul Allen ¶15.

Nor is the excuse that Egan was trying to save money from Connecticut State Retirees "double dipping" and receiving pensions while working at the Sheriff's department a legitimate state purpose. It is clear that Egan discriminated against all retirees, even those that were receiving pensions from employment that had not been with the State of Connecticut. See Affidavit of Henry Hinse ¶2; Affidavit of VicDebartolo ¶2.

There are numerous Special Deputy Sheriffs, now Judicial Marshals, who will testify that Egan stated to them that retirees with pensions were not allowed to work full time. *See* Affidavit of Henry Hinse ¶6-7; Affidavit of Bruce Bissonette ¶5-6; Affidavit of Vic DeBartolo ¶7;Affidavit of James Miller ¶5-6; Affidavit of Bill Hawks ¶6-7, Affidavit of Riley ¶4-6. When Frank Paperelli was reduced to part time status in May of 1997, he was told it was the "policy" of the Department, and that although he did a "good job" and the reduction of his hours "in no way reflect[ed his] work," he was still demoted. See Affidavit of Frank Paperelli ¶5 and Exhibit A thereto. Mr. Paperelli's demotion to part time status was clearly an arbitrary decision based solely on his age and status as a retiree receiving a pension. Younger people were hired by the Judicial Department and were given full-time status, while older Special Deputy Sheriffs were kept part time. See Affidavit of Jaskiewicz ¶5-6. This does not translate into a saving of money for the state.

The Defendants have not offered a legitimate state purpose for which this policy has been made. Therefore, this policy should be struck down as not rationally related to a legitimate state purpose..

**C.     MEEHAN HAS SUFFICIENT PERSONAL INVOLVEMENT TO SATISFY A 42 U.S.C. §1983 CLAIM.**

The Defendant questions whether Meehan has had the requisite personal involvement to be liable for a 42 U.S.C. §1983 claim. The Plaintiff alleges that "Defendant Eileen Meehan was, from December 2000 to the present, the Personnel Manager of the Recruitment, Employee and Marshal Services Section of the Judicial Branch of the State of Connecticut and she has personally engaged in, approved, condoned and acquiesced in all discriminatory actions material thereto from December 2000 to the present." The standards for "personal involvement" are as follows:

> It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under §§ 1983." Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (internal quotation marks omitted). Personal involvement of a supervisory official may be established "by evidence that: (1) the [official] participated directly in the alleged constitutional violation, (2) the [official], after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the [official] created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the [official] was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the [official] exhibited deliberate indifference to the rights of [others] by failing to act on information indicating that unconstitutional acts were occurring. *Id.*; *see also* Al-Jundi v. Estate of Nelson Rockefeller, 885 F.2d 1060, 1066 (2d Cir. 1989) (direct participation not necessary to establish personal involvement).

Johnson v. Newburgh Enlarged School District, 239 F.3d 246, 254-55 (2d Cir. 2001).

Meehan had both participated directly in the alleged constitutional violation in maintaining the discriminatory practices started by Egan (see Memorandum dated 8/20/01 and attached as Exhibit B to the Affidavit of Paul Allen, outlining policies as to wages, leave time, etc.) and she was "grossly negligent in supervising subordinates who committed the wrongful acts" and "she exhibited deliberate indifference to the rights of [others] by failing to act on information indicating that unconstitutional acts were occurring."

As Personnel Manager of the Recruitment, Employee Marshal Services Section of the Judicial Branch, Meehan should be personally involved in all employment decisions, including the decision of who works full time and who works part time. Meehan claims that she has "never had authority to hire, fire, discipline, assign schedule or set working conditions for the Judicial Department employees nor has she ever had the authority to set or change Judicial Department Policy." Defendants argue that during his deposition, the Plaintiff was not aware of Ms. Meehan's duties and could not articulate why he believed she was responsible for the actions of the Judicial Branch. The Plaintiff, who had worked at the Judicial Department for several years, received memorandums from Ms. Meehan all the time, outlining policies for rates of pay, leaves of absence, and other employment conditions relating to Marshals within the Judicial Department. See Affidavit of Paul Allen ¶18 and Exhibit B thereto, which is an example of Meehan setting policy for the Judicial Branch concerning the Marshal's daily rate of pay, personal leaves, Holidays, military leaves, Jury Duty, compensatory time, and training. To say that she does not have control of the Judicial Branch's policy strains reason.

Plaintiff also urges the Court to closely read Meehan's affidavit. The Affidavit largely discusses Meehan's role as **Assistant Director** of the Office of the County Sheriffs in Hartford from **June 1997 through November 30, 2000**. Plaintiff's Complaint clearly seeks to hold Egan responsible for any employment discrimination prior to December 1, 2000 and Eileen Meehan for any discrimination after December 1, 2000, a date delineated by the change from the Sheriff's Department to the Judicial Department. Her affidavit does not even discuss her present role as Personnel Manager in the Judicial Branch until the twelfth paragraph out of thirteen paragraphs. It is misleading in that regard.

Meehan was also negligent in not changing the discriminatory policy that Egan placed upon the older retired Special Deputy Sheriffs. In actuality, at least one of the Judicial Marshals f/k/a Special Deputy Sheriffs had his hours reduced when Meehan took over. See Affidavit of Ken Jaskiewicz ¶8. Ms. Meehan had ample opportunity to become aware of and change the discriminatory policy, but she chose not to. And she cannot claim that she was not aware that the discrimination took place. She has been aware of and taken part of the proceedings in front of the EEOC and through all aspects of this lawsuit, yet the policies have not changed. Her indifference to the complaint of the employees makes her personally involved.

**D.   THE DEFENDANTS ARE NOT ENTITLED TO THE DEFENSE OF QUALIFIED IMMUNITY.**

Again, the Defendants begin their argument by claiming Mr. Allen's claims must fail because he doesn't have a property interest in his job. Again, a property interest is necessary to support a **due process** claim. It is not necessary to support an **equal protection** claim, which is Mr. Allen's cause of action. Defendant's arguments are completely misplaced.

Egan and Meehan are not entitled to qualified immunity. Under the Harlow v. Fitzgerald standard, a government official sued in his individual capacity, *see generally* Hafer v. Melo, 502 U.S. 21, 25 (1991), is entitled to qualified immunity in any of three circumstances:

> (1) if the conduct attributed to him is not prohibited by federal law, *see*, *e.g.*, County of Sacramento v. Lewis, 118 S.Ct. 1708, 1714 n. 5 (1998); Siegert v. Gilley, 500 U.S. at 232; or (2) where that conduct is so prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time of the conduct, *see*, *e.g.*, Harlow v. Fitzgerald, 457 U.S. at 817-19; or (3) if the defendant's action was "objective[ly] legal[ly] reasonable[] . . . in light of the legal rules that were clearly established at the time it was taken." Anderson v. Creighton, 483 U.S. 635, 639 (1987) (internal quotation marks omitted); *see* Harlow v. Fitzgerald, 457 U.S. at 819. These three issues should be approached in sequence, for if the second is resolved favorably to the official, the third becomes moot; a favorable resolution of the first moots both the second and the third.

X-Men Sec., Inc. v. Pataki, 196 F.3d 56, 65-66 (2nd Cir. 1999).

Applying the test to the case at bar, 1) the conduct attributed to the Defendants violated the Plaintiff's 14th Amendment rights, therefore prohibited by Federal Law; 2) Plaintiff's Equal Protection rights were clearly established and 3) Egan, acting out of spite, was not objectively legally reasonable in his actions. Meehan was aware of Egan's policy and supported it throughout her tenure as Assistant Director prior to December 1, 2000 and as Personnel Manager after that date. By way of example of Meehan's control over the Department Policy, see Exhibit B to the Affidavit of Paul Allen.

**E.   THE PLAINTIFF'S CLAIMS AGAINST DEFENDANTS EGAN AND MEEHAN ARE NOT BARRED BY THE STATUTE OF LIMITATIONS.**

The Plaintiff's claims are not barred by the Statute of Limitations. On January 6, 2000, Plaintiff, who had previously been working full time, 5 days a week, had one of his days given to another younger Special Deputy Sheriff, Robert Foltz, per the policy of the Sheriff's Department. The Defendants claim that Plaintiff was originally given the fifth day only because Special Deputy Sheriff Bouchard was out on compensation and they needed a replacement. In fact, Bouchard returned in October, 3 months before Egan demoted the Plaintiff in January, 2000. Bouchard's return in October had nothing to do with his demotion in January. See Affidavit of Paul Allen ¶10.

This specific violation, the demotion from full time to part-time, happened on January 6, 2000, within the three year statute of limitations from the filing date of December 19, 2002. The Plaintiff timely filed his Complaint with the EEOC and then with the Court. Simply because he knew of the discrimination earlier than January 6, 2000 does not mean he no longer has any rights to sue for ongoing discrimination. As long as the charge is timely filed for the specific incident of discrimination, "[t]he existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts

12

are independently discriminatory and charges addressing those acts are themselves timely filed." National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002). It matters not that the Plaintiff knew that Defendants discriminated against older, retired people with pensions as far back as 1995. It matters only that the discriminatory demotion occurred on January 6, 2000 and that the Complaint was timely filed relative to that event.

Moreover, the Plaintiff also believes that there is merit in his claims prior to January 6, 2000. The Defendant is correct that "merely establishing several distinct acts of discrimination does not establish a continuing violation." Purdy v. Town of Greenburgh, 166 F.Supp. 2d 850, 863 (S.D.N.Y.2001). However, his claims for the repeated denials of his fifth day are likened to a hostile work environment. Plaintiff was allowed to work full time from August of 1999 through January 6, 2000. Each and every Friday thereafter, Plaintiff was not allowed to work on Friday based solely on his age and his status as a retiree with a pension. From 1995 to August 1999, the Plaintiff was also not allowed to work each and every Friday based solely on his age and status as a retiree. Joel Riley, the Major of Operations (third in command to Egan, a management position) from the beginning of Egan's tenure as High Sheriff, attests that Egan's policy was that full time was only for people who did not have a pension, and that Egan made that a major consideration in scheduling Special Deputy Sheriffs. (See Affidavit of Joel F. Riley ¶1-4.) It is and was a policy or practice of the Department, mandated by Egan, to discriminate against older, retired people with pensions. In hostile work environment situations, "The repeated nature of the harassment or its intensity constitutes evidence that management knew or should have known of its existence." National Railroad Passenger Corp. v. Morgan, 536 U.S. at115. "Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered

by a court for the purposes of determining liability. That act need not, however, be the last act." Id. Because the management did know of the hostile environment and continued to discriminate, the Plaintiff believes he should be allowed to recover for the period of 1995 through August 1999.

In any event, whether or not the Plaintiff can reach back to 1995 for damages for his equal protection claim, certainly when he was demoted from full time to part time on January 6, 2000, that was the last adverse employment action against the Plaintiff. The Complaint alleging that violation was timely filed with the EEOC and with the Court, and the Plaintiff is entitled to damages from that time forward. It is not relevant when the Plaintiff was aware that the discrimination began. It is only relevant when the "discrete discriminatory act" occurred. See National Railroad Passenger Corp. v. Morgan, 536 U.S. at 113.

In addition, the findings of the EEOC denying Plaintiff's claim of a continuing violation because he was not given a chance to "prove" a continuing violation is not relevant. First, that is why the EEOC issues the Right to Sue letter - because it is for the Court to make the ultimate decision. Second, the EEOC was not privy to the multiple affidavits from Plaintiff's co-workers and manager who support Plaintiff's claim that this was an ongoing concern for the Sheriff's Department and continued by the Judicial Branch.

**IV.   CONCLUSION**

The Plaintiff requests that the Court deny the Joint Motion to for Summary Judgment.

                              THE PLAINTIFF

                              By_____
                              Francis A. Miniter
                              Christine E. Corriveau

> Miniter & Associates
> 100 Wells Street Unit 1-D
> Hartford, CT 06103
> 860-560-2590 ct 09566/21212

<u>CERTIFICATION</u>

      I hereby certify that a copy of the foregoing was mailed to the following this _____ day of May, 2004:

Jane B. Emons, AAG
55 Elm Street
P.O. Box 120
Hartford, CT 06141

Jeffrey W. Kennedy
Milano & Wanat
471 East Main Street
Branford, CT 06405

                                                  _____
                                                  Francis A. Miniter
                                                  Christine E. Corriveau