```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT


PAUL ALLEN,                         :
                                    :
   Plaintiff,                       :
                                    :
v.                                  :    No. 3:02CV2251(DJS)
                                    :
GERARD EGAN, EILEEN MEEHAN,         :
and NEW LONDON SHERIFF'S            :
DEPARTMENT n/k/a JUDICIAL           :
BRANCH OF THE STATE OF              :
CONNECTICUT,                        :
                                    :
   Defendants.                      :
```

## MEMORANDUM OF DECISION

Plaintiff, Paul Allen, brings this action against Gerard Egan, Eileen Meehan, and the New London County Sheriff's Department, whose responsibilities have been transferred to the Judicial Branch of the State of Connecticut. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, defendants have filed a motion for summary judgment (dkt. # 36) on the remaining counts in the Amended Complaint. For the reasons set forth herein, defendants' motion is **GRANTED in part** and **DENIED in part**.

### I. FACTS

In an earlier proceeding, the Court partially granted defendants' motion to dismiss and dismissed eleven of the thirteen counts in the Amended Complaint. The remaining counts are claims that defendants Egan and Meehan violated the Equal Protection Clause of the U.S. Constitution, which is brought

pursuant to 42 U.S.C. § 1983.  Defendants claim that Allen's § 1983 claim for events preceding December 19, 1999 is time-barred by Section § 52-577 of the Connecticut General Statutes.  Allen argued that defendants' conduct constituted a continuing violation that persists to this date, and therefore his claims are not time-barred.  Denying the motion to dismiss the equal protection claims, the Court held that "[d]etermining whether the events comprising the basis for Allen's claims are part of a single, continuing course of conduct is fact-intensive, and therefore inappropriate at this stage of the proceeding."  Allen v. Egan, 303 F. Supp. 2d 71, 79 (D. Conn. 2004).

Both parties agree the following material facts are not in dispute.  Beginning January 1996, plaintiff, Paul Allen, was employed as a "Special Deputy" of the New London Sheriff's Department where his supervisor was defendant High Sheriff Gerard Egan.  After a state constitutional amendment abolishing all sheriff's departments throughout the state took effect in December 2000, the sheriffs' former responsibilities shifted to the Judicial Branch of the State of Connecticut.  At that time, Allen's title became "Judicial Marshal" and Egan was no longer his supervisor.  Allen worked four days a week until August 1999. Between August 1999 and January 2000, Allen worked five days a week but received written notice on January 6, 2000 from Chief Deputy Tom Connors that Allen's work week would be reduced back

to four days a week. A coworker was out on workers' compensation leave during part of the time that Allen worked five days, but the parties dispute whether Allen filled in as a replacement for the period that the coworker was absent.

In the Amended Complaint, Allen originally claimed that Egan had stated a discriminatory policy that prevented state retirees from obtaining full-time (five day) status. Allen has subsequently submitted affidavits from eight coworkers in order to support his original claim against Egan. In these affidavits, Allen's coworkers similarly claim that Egan maintained a policy to discriminate against state retirees. (Dkt. # 45, Bruce Bissonette Aff., ¶ 5 ("Gerard Egan has told me that full-time is only for people who did not have a pension"); Dkt. # 46, Vic Debartolo Aff., ¶¶ 5-10; Dkt. # 47, Bill Hawks Aff., ¶¶ 6-8; Dkt. # 48 Hervey Hinse Aff., ¶¶ 6-7; Dkt. # 49, Ken Jaskiewicz Aff., ¶ 9; Dkt. # 50, James Miller Aff., ¶¶ 5-7;, Dkt. # 51 Frank Paparelli Aff., ¶ 5 (referring to attached Ex. A "Staffing" letter from Chief Deputy Thomas Connors that refers to the "policy of this department"); Dkt. # 52, Joel F. Riley Aff., ¶¶ 4-7).

Defendants do not dispute whether Egan had stated such a discriminatory policy to Allen or the affiants. Instead, Defendants submit statistical evidence that document the age and full-time status of the Special Deputies and Judicial Marshals

during the periods in question. (Dkt. # 38, ¶ 22).  The followings facts were not disputed by Allen:

Since Allen's swearing in date of August 31, 1995, there have been thirty appointments for special deputies; of those thirty, thirteen were part-time and seventeen were full-time.  Of the thirteen part-timers hired, ten were over age forty and three were under forty.  Of the seventeen full-timers hired, six were over forty and eleven were under forty.

As of January 10, 2001, there were eighty-two Judicial Marshals in New London Judicial District.  Of those Marshals, forty-seven were state retirees and age fifty or older.  Thirty-two were part-time and fifteen were full-time.  That is, of the retiree class, 32% worked full-time.  The remaining thirty-five Marshals were age forty-nine or younger; of these, four were part-time and thirty-one were full-time.  Therefore, 89% of the nonretirees worked full-time.

The parties further agree that defendant Eileen Meehan was the Personnel Manager of the Recruitment, Employee and Marshal Services Section of the Judicial Branch of the State of Connecticut.  The parties dispute, however, whether Meehan had supervisory authority over Allen or the other Judicial Marshals after the sheriffs' responsibilities were transferred to the Judicial Branch in December 2000.

In response to the denial of the motion to dismiss, Allen

has submitted new affidavits to support his claim of a discriminatory policy in place at the Department that was enforced by defendant Egan.

## II. DISCUSSION

### A. STANDARD

A motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute.'" American Int'l Group, Inc. v. London Am. Int'l Corp., 664 F.2d 348, 351 (2d Cir. 1981) (quoting Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir. 1975)). A dispute concerning a material fact is genuine "'if evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The court must view all

inferences and ambiguities in a light most favorable to the nonmoving party. See Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Id.

### B. EQUAL PROTECTION

1. Was there a policy of age discrimination for full-time status for Special Deputies/Judicial Marshals?

The Fourteenth Amendment to the United States Constitution provides that "no state shall . . . deny to any person within its jurisdiction the equal protection of the laws," and is "essentially a direction that all persons similarly situated should be treated alike." City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 439 (1985). A plaintiff claiming denial of equal protection rights can proceed according to several theories:

> A plaintiff could point to a law or policy that "expressly classifies persons on the basis of race." [Hayden v. County of Nassau, 180 F.3d 42, 48 (2d Cir. 1999)] (citing Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 213, 227-29 . . . (1995)). Or, a plaintiff could identify a facially neutral law or policy that has been applied in an intentionally discriminatory manner. See Yick Wo v. Hopkins, 118 U.S. 356, 373-74, 6. . . (1886). A plaintiff could also allege that a facially neutral statute or policy has an adverse effect and that it was motivated by discriminatory animus.

Brown v. City of Oneonta, New York 221 F.3d 329, 337 (2d Cir. 2000). The Second Circuit has held that direct evidence by a relevant manager may demonstrate bias. See Owens v. New York

Housing Auth., 934 F.2d 405, 410 (2d Cir.) (supervisor's comments that the plaintiff's problems had to do with her age and entry into menopause constituted sufficient direct evidence to preclude granting of summary judgment), cert. denied, 504 U.S. 964 (1991). In his Amended Complaint, Allen has credibly alleged a discrete discriminatory act that occurred on January 6, 2000 when his hours were reduced from five days to four days per week.  Allen further alleges that the Department had an age discrimination policy that continues to this day.  Allen has submitted affidavits that may provide direct evidence that support his claim.  A jury may reasonably infer from this evidence that there was a discriminatory policy in place from the time Allen was hired until the present date.

Typically, where plaintiff's direct evidence establishes a prima facie case of disparate treatment, the employer ordinarily responds by disputing the plaintiff's showing (e.g., by adducing evidence that a biased statement was not made or by justifying the employer's practice by demonstrating the applicability of any statutory immunities or affirmative defenses).  See e.g., Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 122-25 (1985) (finding facially discriminatory policy under the ADEA and rejecting the employer's statutory bona fide occupational qualification and bona fide seniority system defenses); Phillips v. Martin Marietta Corp., 400 U.S. 542, 544 (1971) (per curiam)

(remanding for evidence on the bona fide occupational qualification defense).

Here defendants have done neither.[1] Plaintiff's direct evidence that defendant Egan stated a discriminatory policy to various employees remains undisputed by the defendants. Instead, defendants provide statistical evidence that members of the protected class were allowed to work five days a week to prove that no such discriminatory policy was actually in place. Viewed in the light most favorable to Allen, defendants' statistical evidence demonstrates that Egan's alleged discriminatory policy was not uniformly applied rather than disputes the existence of a discriminatory policy. Allen claims that this lack of uniformity is because Egan gave special consideration, i.e., full time status, to those Judicial Marshals in the protected class with whom he was friendly. Therefore, whether there was an age discrimination policy, particularly against those retirees receiving pensions who were not friendly with Egan, is a material disputed fact to be decided at trial.

    2.    Was Sheriff Egan personally involved in mandating a discriminatory policy prior to December 1, 2000?

---

[1] Defendants argue forcefully and correctly that Allen cannot demonstrate a property interest in obtaining or maintaining full-time status as a Judicial Marshal. In fact, Allen concedes as much. A property interest, however, is required for a due process claim, not for an equal protection claim. The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne, 473 U.S. at 439.

Allen, through the affidavits he has submitted, has provided support for his claim that Egan was personally involved in any existing age discrimination policy. It is not disputed that as Allen's supervisor, Egan was the relevant manager until the abolition of the sheriffs' department in December 2000. Again, defendants do not dispute that Egan announced a discriminatory policy to various Special Deputies during his tenure as High Sheriff. Therefore a jury may reasonably determine that defendant Egan was personally involved in the alleged discrimination until December 1, 2000.[2]

    3.    Was defendant Meehan personally involved in mandating a discriminatory policy after December 1, 2000?

To defeat summary judgment, the nonmovant's evidence must be sufficient to support a reasonable jury's verdict. See Liberty Lobby, 477 U.S. at 250-252. Allen does not allege any specific credible facts that Meehan had personal involvement with the alleged discriminatory policy. Allen concedes that he has no knowledge of Meehan's job responsibilities. Allen's argument is, fundamentally, that someone with Meehan's title (e.g., Personnel Manager) "should have" known about the alleged discriminatory policy. This mere speculation cannot meet the evidentiary standard set forth in Rule 56. Because no jury could reasonably

---

[2]It should be noted that "[b]ecause the New London Sheriff's Department no longer exists, any claim for injunctive relief against Egan is moot and should be dismissed." Allen, 303 F. Supp. 2d at 78 n.4.

infer from the facts alleged that defendant Meehan was personally involved in any discriminatory policy, she must be dismissed from this case.

### III. CONCLUSION

For the reasons set forth herein, the First Claim in the Amended Complaint must be resolved at trial, but there is no genuine issue of material fact with respect to the Second Claim, and defendants' motion for summary judgment (dkt. # 36) is **GRANTED in part** and **DENIED in part**.  Judgment shall enter in favor of defendant Meehan on the Second Claim.  This matter is referred to the Honorable Thomas P. Smith, United States Magistrate Judge, for the purpose of conducting a settlement conference.  The parties shall file their joint trial memorandum on or before **April 29, 2005.**

So ordered this 14th day of March, 2005.

/s/DJS
_____
**DOMINIC J. SQUATRITO
UNITED STATES DISTRICT JUDGE**